UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
MICHAEL GREEN,                                                          :
                                                                        :
                                        Plaintiff,                      :
                                                                        :         13 Civ. 8671 (PAE)
                -v-                                                     :
                                                                        :         OPINION & ORDER
DISTRICT COUNCIL 1707, AMERICAN                                         :
FEDERATION OF STATE, COUNTY, AND                                        :
MUNICIPAL EMPLOYEES, AFL-CIO;                                           :
RAGLAN GEORGE, JR.                                                      :
                                                                        :
                                        Defendants.                     :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Michael Green ("Green") brings this action against defendants District Council 1707 ("DC 1707") and Raglan George, Jr. ("George") for employment discrimination and wrongful termination.  Green alleges that defendants discriminated against him and terminated his employment on the basis of his race and ancestry, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981 ("Section 1981"), and the New York City Human Rights Law, N.Y. Admin. Code § 8-107(1)(a) ("NYCHRL").  Green also alleges that defendants violated § 193 of the New York Labor Law ("NYLL") by, *inter alia*, failing to pay him severance and for unused vacation time upon his termination.  In the alternative, Green alleges that defendants breached an implied contract to pay such benefits, and that these failures to pay were motivated by racial animus.

      Defendants now move to dismiss Green's First Amended Complaint ("FAC"), under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, on the ground that the FAC fails to plead facts sufficient to show intentional discrimination on the basis of race or ancestry.

They also move for sanctions under Rule 11.  For the reasons that follow, the motion to dismiss is granted, and the motion for sanctions is denied.

**I.     Background**[1]

    **A.     Green's Employment by DC 1707**

DC 1707 is a labor union for state, county, and municipal employees in New York.  FAC ¶ 5.  Green, a Caucasian man of Jewish ancestry, *id.* ¶ 12, began working for DC 1707 in September 1991, *id.* ¶ 13.  During Green's employment at DC 1707, George, an African American man, *id.* ¶ 22, served as the union's Executive Director, its highest rank of employee, *id.* ¶ 7, and was Green's supervisor, *see id.* ¶ 20.  In September 2008, George promoted Green to Organizing Director, *id.* ¶ 24, an Assistant Director-level job, *id.* ¶ 15.  Green held that position through his termination from DC 1707 on May 17, 2013.  *Id.* ¶ 13.  Although he had been so during an earlier part of his employment, Green was not a member of the DC 1707 Professional Employees Union while he served as Organizing Director, between September 2008 and May 2013.  *Id.* ¶¶ 14, 16.

While under George's supervision, Green did not receive any formal performance evaluations, nor any warnings that his work performance was unsatisfactory or deficient.  *Id.* ¶¶ 19–20.  By all accounts, Green was qualified for and successful in his role as Organizing Director; in that position, he brought in approximately 250 new members to the union per year.  *Id.* ¶¶ 17–18.

---

[1] The facts that form the basis of this Opinion are drawn from the FAC.  Dkt. 18.  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

B.     **Pre-Termination Allegations of Discrimination**

In 2003 or 2004, while Green was serving as Director of Daycare and Headstart, George accused him of not doing his job during an Assistant Directors' meeting. *Id.* ¶ 33. Green left the meeting to retrieve for George an example of his work, but upon his return he was told he had been fired. *Id.* When others at the meeting objected and intervened, George changed his mind and rescinded Green's termination. *Id.* When African-American or Latino employees struggled with their work performance, George provided them with multiple opportunities to improve. *Id.* ¶ 31.

In 2011 or 2012, Green requested vacation time. *Id.* ¶ 28. George insisted that Green ask each other Assistant Director to be sure they did not want to take a vacation during the same period, and then took about a week to decide whether to approve his request. *See id.* African-American and Latino employees were not subjected to such difficulty when they requested vacation. *Id.* ¶ 29.

C.     **Green's Termination**

On May 17, 2013, Green stopped by George's office, whereupon George accused Green of not doing his job. *Id.* ¶ 53. Green countered that he was doing a lot of work; George replied that he was "not seeing it." *Id.* After Green responded that he was working on a specific project and George again expressed disbelief, Green told George "that if he left his office, he would be aware of the work that [Green] had been doing." *Id.* George became incensed by this suggestion and began screaming at Green. *Id.* In response, Green raised his voice and insisted that he was in fact doing his job. *Id.* George ended the exchange by telling Green to "take a hike." *Id.*

Shortly after he left George's office, Green received a memorandum from George, delivered by DC 1707's Human Resources Director, stating that he was being terminated

3

"effective today" for being "extremely insubordinate" to George. *Id.* ¶ 54; *see* FAC Ex. A ("Termination Memo").  In the memo, George ordered Green to prepare the report he had been working on by May 28, 2013, and stated that George would then reconsider Green's position. FAC ¶ 54; Termination Memo.

Over the following weekend, Green spoke with the Associate Executive Director of DC 1707, who confirmed that Green was terminated and should not return to work.  FAC ¶ 55.  After that conversation, Green ceased working on, and never completed, the report he had been preparing.  *Id.* ¶ 57.  Later, Green received a letter from George, dated May 31, 2013, confirming that he had been terminated for insubordination on May 17, 2013 and noting that he had not submitted the report per George's request.  *Id.* ¶ 62; *see* FAC Ex. B ("Termination Letter"). Since his termination, Green has not been paid severance or for unused vacation days.  *See id.* ¶¶ 67, 81.

### D.     Procedural History

On December 6, 2013, Green filed his original Complaint.  Dkt. 1.  On March 7, 2014, defendants submitted a motion to dismiss.  Dkt. 8.  On March 11, 2014, defendants submitted a motion for sanctions under Rule 11.  Dkt. 12.  On March 28, 2014, Green filed the FAC. Specifically, the FAC alleges that, in terminating his employment, defendants discriminated against him on the basis of race and ancestry, in violation of 42 U.S.C. § 1981 and NYCHRL § 8-107(a).  The FAC also alleges that DC 1707's failure to pay severance benefits and for unused vacation days upon termination constitutes breach of its implied contract to pay non-union employees such benefits, or, in the alternative, a violation of NYLL § 193.

On April 17, 2014, defendants submitted a motion to dismiss the FAC, Dkt. 21, with an accompanying memorandum of law, Dkt. 22 ("Def. Br.").  On May 1, 2014, Green submitted a

4

memorandum of law in opposition to the motion to dismiss. Dkt. 23 ("Pl. Br."). On May 9, 2014, defendants filed their reply. Dkt. 24 ("Def. Reply Br."). On July 1, 2014, the Court heard argument on defendants' motions. *See* Dkt. 30.

## II.     Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Although "[t]he pleading standard for employment discrimination complaints is somewhat of an open question," in the Second Circuit, these claims "must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order). "[T]he elements [of a prima facie case] provide an outline of what is necessary to render her claims for relief plausible." *Sommersett v. City of N.Y.*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011); *see also Trachtenberg v. Dep't of Educ. of N.Y.*, 937 F. Supp. 2d 460, 466 (S.D.N.Y. 2013).

A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555. The facts pled "must be enough to raise a right to

5

relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted). The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

## III.    The Motion to Dismiss

In the FAC, Green alleges that, throughout his employment at DC 1707, he was treated less well than similarly-situated employees who were not Caucasian or Jewish. FAC ¶ 21. He alleges that George "evinced a dislike of [Green] that was not based on any specific reason he communicated to [Green]," *id.* ¶ 23, and that George regularly used a "derisive" or "derogatory" tone of voice when speaking to Green, *id.* ¶¶ 25–26. And, the FAC alleges, defendants favored African-American and Latino employees and disfavored Caucasian employees. *See id.* ¶¶ 31, 38–39. To illustrate this alleged discrimination, the FAC describes (though it does not name) three ostensible employee "comparators" accused of misconduct whom, it alleges, were treated more favorably than Green: a Latina woman, *see id.* ¶¶ 70–74, an African-American man, *see id.* ¶¶ 36–37, and an African-American woman, *see id.* ¶¶ 32, 75.[2]

---

[2] The FAC also alleges, summarily, that two Caucasian and Jewish individuals were poorly treated in ways similar to Green. *See id.* ¶¶ 34–37, 69. But, as with the comparators, Green's allegations regarding these two unidentified individuals are exceedingly sparse. One appears to have been treated exactly the same as the male African-American comparator described in the FAC and whom the Court identifies here as Employee B, *compare* FAC ¶¶ 34, 36–37 *with* discussion of Employee B *infra*. As to the other, Green alleges only that he was "fired in or about 2005 following a dispute with defendant George over that employee's medical leave." FAC ¶ 35. Based on these bare and conclusory allegations, it is impossible to infer that either individual was treated less favorably than others outside their protected group, much less that defendants intentionally discriminated against them on the basis of their race or ancestry.

Green also contends that his termination was unjustified, *id.* ¶ 58; that George's allegations of insubordination were a pretext for discrimination, *id.* ¶ 59; and that George deliberately fired Green to prevent him from resigning and collecting severance benefits, *id.* ¶ 60. Relatedly, Green alleges that defendants have administered DC 1707's severance policy for non-unionized employees in a discriminatory manner. *Id.* ¶ 68. In this regard, Green asserts that George's decision to treat him "so much more harshly" than other employees was "motivated by animus against [Green] based on [Green]'s race and ancestry," *id.* ¶ 74, and that "George was motivated by bias, based on race and ancestry, against [Green] in his refusal to pay [Green] his unused vacation pay," *id.* ¶ 85.

### A.     Claims of Racial Discrimination Under § 1981

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For the purposes of § 1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 "thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004); *see* 42 U.S.C. § 1981(b). "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson*, 375 F.3d at 225.[3]

---

[3] A *prima facie* case of employment discrimination under Title VII requires proof that: "(1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action

7

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  "In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) ("In order to survive a motion to dismiss . . . , the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint.") (internal quotation marks and citation omitted); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (same).

---

took place under circumstances giving a rise to an inference of discrimination based on plaintiff's membership in the protected class."  *El-Din v. N.Y.C. Admin. for Children's Servs.*, No. 12 Civ. 1133 (PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012) (citing *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).  To survive a motion to dismiss, "plaintiffs alleging employment discrimination need not plead a *prima facie* case."  *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013).  However, the elements of a *prima facie* case "provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible."  *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013) (internal quotation marks, citation, and brackets omitted); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515 (2002).  Thus, courts "'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiffs claim and the grounds on which it rests.'"  *Wilson v. N.Y.C. Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013) (quoting *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)).

Here, defendants do not dispute that Green has adequately alleged two of the three elements under § 1981: that he is a member of a racial minority[4] and that the alleged discrimination occurred in a workplace setting in which he sought to make or enforce contracts.[5] Green's racial discrimination claims all therefore turn on whether he has alleged facts that support the plausible inference that, in terminating his employment, defendants intentionally discriminated against him, on the basis of his race or ancestry.

There are a number of means by which the requisite inference of discrimination can be properly alleged, or, at a later stage, established. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) ("[C]ircumstances contributing to a permissible inference of

---

[4] Section 1981 has been construed to cover a wide range of race-based discrimination, including discrimination against whites. Although the statute on its face guarantees equality with "white citizens," the Supreme Court in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), made clear that "race" in the context of § 1981 must be interpreted according to "[t]he understanding of 'race' in the 19th century," when the statute was adopted. *Id.* at 610; *accord Rigodon v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 2548 (GEL), 2004 WL 2471859, at *4 (S.D.N.Y. Nov. 1, 2004). Accordingly, § 1981 "protect[s] from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics," including those of Jewish descent. *Al-Khazraji*, 481 U.S. at 613.

[5] Defendants do argue, in addition to challenging the claim of racial animus, that the FAC fails to "allege that [Green's] right to enter into an employment at will contract with DC 1707 was impaired [as required to state a claim under § 1981]," Def. Br. 3, because the facts pled "demonstrate that George was willing to reemploy Green if he completed the report [requested in the Termination Memo]," *id.* at 4. But this argument misunderstands the third element of § 1981. The FAC clearly alleges that (1) Green "was fired from his job for reasons other than misconduct," FAC ¶ 63, and (2) "the stated reason for [Green]'s firing, the allegation that [Green] was 'extremely insubordinate,' was a pretext for discrimination," *id.* ¶ 59. Accordingly, the FAC adequately alleges that "the discrimination concerned one or more of the activities enumerated in the statute," *Mian*, 7 F.3d at 1087, *i.e.*, the termination of an at-will employment contract, *see* 42 U.S.C. § 1981(b). Although George's offer to reconsider Green's position, *see* FAC ¶ 54; Termination Memo, is relevant to whether the FAC's allegations as to the first element, discriminatory intent, are adequate, it does not undermine the FAC's allegations as to the third element. Because defendants do not dispute that the alleged discrimination occurred in a workplace setting in which Green sought to make or enforce contracts, this element is adequately pled.

discriminatory intent may include the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position . . . or the employer's criticism of the plaintiff's performance in ethnically degrading terms . . . or its invidious comments about others in the employee's protected group . . . or the sequence of events leading to the plaintiff's discharge . . . or the timing of the discharge[.]").  Here, the FAC does not recite any instances in which ethnically degrading terms or invidious comments were used at DC 1707, whether in connection with Green or otherwise.  Instead, Green relies on a different, but also recognized, method to raise an inference of discrimination: disparate treatment.  Specifically, Green seeks to show that defendants, following his admittedly heated altercation with George, *see* FAC ¶¶ 53–54, treated him less favorably than similarly situated employees outside his protected group.  *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000).

     Where a plaintiff seeks to derive an inference of discrimination from allegations of disparate treatment, he or she must plausibly allege the existence of at least one comparator who was more favorably treated despite being "similarly situated to the plaintiff in all material respects," meaning the comparator was "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (internal quotation marks omitted).  The issue here, therefore, is whether the FAC has "adequately alleged that any of [Green's] proffered comparators is similarly situated in all material respects and that a prudent person would think [them] roughly equivalent." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697 (S.D.N.Y. 2011).  "At the motion to dismiss stage . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine

that the comparators are similarly situated." *Id.* at 698. "Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient to state an equal protection claim." *Id.* (citations omitted).

Here, the FAC identifies three ostensible comparators who, while working at DC 1707, committed misconduct: one Latina employee ("Employee A"), *see* FAC ¶¶ 70–74, one male African-American Assistant Director ("Employee B"), *see id.* ¶¶ 36–37, and one female African-American Assistant Director ("Employee C"), *see id.* ¶¶ 32, 75.[6] It alleges that these employees were ultimately not fired, and/or were given an opportunity to resign, thus allowing them to preserve their entitlement to severance. The Court considers the three in turn, to assess the FAC's claim that each is similarly situated to Green.

*Employee A*: The FAC alleges that, in 2007, Employee A was discovered to have used a credit card belonging to DC 1707 for personal use, in violation of union policy, *see id.* ¶ 70, and that these actions "amounted to misconduct that would have disqualified her from receiving a severance payment," *id.* ¶ 73. It alleges that, in contrast with the treatment Green received, Employee A was "permitted" by George to resign from her employment rather than be fired. *Id.* ¶ 70. Employee A was also permitted to use all of her unused sick and vacation time before she resigned, *see id.* ¶ 71; the FAC alleges that George "made the decision to permit [Employee A] to resign rather than be fired for the express purpose of allowing her to collect a severance benefit," *id.* ¶ 72. Finally, the FAC alleges, George's decision to treat him "so much more

---

[6] Because the FAC does not identify these comparators by name, for ease of reference the Court will refer to them as Employees A, B, and C, respectively.

harshly than [Employee A] was motivated by animus against [Green] based on [Green]'s race and ancestry." *Id.* ¶ 74.

The FAC, however, does not supply any basis on which to assess whether Employee A is an apt comparator for Green. It does not allege that the two occupied similar positions (*i.e.*, Assistant Director-level positions), worked in the same group, or even reported directly to the same supervisor. *Cf. Brown v. Daikin America Inc.*, No. 12 Civ. 2955 (SLC), 2014 WL 2895974, at *6–7 (2d Cir. June 27, 2014) (finding employees similarly situated, absent allegations of "job function, experience, qualifications, or rate of pay," when they worked in same group and reported to same supervisor) (internal quotation marks, citation, and brackets omitted). Instead, it merely describes Employee A as a "Latina employee" of the union. *See* FAC ¶¶ 70, 74. Even drawing all reasonable inferences in Green's favor, the FAC fails to allege facts on which one could plausibly infer that Green and Employee A were subject to the same performance evaluation and discipline standards. Further, the FAC does not allege whether Employee A, unlike Green, was in the DC 1707 Professional Employees Union and therefore subject to the Professional Staff Collective Bargaining Agreement ("Professional Staff CBA"). *Cf. id.* ¶¶ 42–52 (describing DC 1707's severance policy). The FAC therefore has not "adequately alleged" that Employee A "is similarly situated [to Green] in all material respects and that a prudent person would think [her] roughly equivalent." *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 697.

Furthermore, even if Employee A were an apt comparator of Green's with respect to job title and performance standards, the spare allegations in the FAC do not supply a non-speculative basis to conclude that Green and Employee A were treated differently *because of race*. On the basis of the FAC, it is at least equally conceivable, and indeed more plausible, that defendants'

12

differing response to the allegations against Green and those against Employee A derived from the fact that the two were accused of different misconduct occurring in different settings. Employee A's disciplinary issues arose in the context of the eventual discovery of past wrongdoing; Green's arose out of a heated confrontation with a supervisor giving rise to an immediate termination.

And, significantly, the FAC does not allege that Employee A went unpunished. Instead, it alleges that she preemptively resigned when her misconduct was discovered; the FAC does not allege that, had she not resigned, she would have been allowed to remain in her job. *See* FAC ¶ 70. "In the end, both [Employee A] and [Green] lost their jobs, the most serious form of discipline to which they could have been subjected." *Ruiz*, 609 F.3d at 494. The FAC's claim that "George made the decision to permit [Employee A] to resign rather than be fired for the express purpose of allowing her to collect a severance benefit," *id.* ¶ 72, does not, therefore, support an inference of race-based favoritism. Simply put, the FAC does not allege facts on which a court could plausibly conclude that the decision to effectuate the two employees' employment terminations by different means (compelled resignation versus firing) derived from racial discrimination.

***Employee B***: The FAC alleges that, in 2010, Employee B, a Political Action Director responsible for DC 1707's newsletter, was fired for repeatedly being late with the newsletter. FAC ¶ 36. Employee B was informed that he was being fired at a staff meeting on a Wednesday or Thursday and was told to come to work on Monday to argue why he should not be fired. *Id.* ¶ 37. After Employee B appealed as directed, George rescinded his termination. *Id.*

In some respects, Employee B is an apt comparator for Green: both were terminated in an abrupt manner based on accusations of misconduct, albeit of different types (for Employee B,

13

being late with a newsletter; for Green, insubordination in a meeting with his supervisor). And both employees were given the opportunity to seek reinstatement after George's termination of them: Green by completing a report, Employee B by coming to work to argue why he should not be fired. Critically important, however, the FAC alleges that Green, unlike Employee B, chose not to avail himself of George's express offer to reconsider his termination decision. *Id.* ¶¶ 54–55, 57, 62. That factual difference very plausibly accounts for the different outcomes Green and Employee B experienced: The FAC does not, and cannot, allege that, had Green accepted George's request that he complete the report on which he was working, George would have stuck by his impulsive decision to terminate Green.

The FAC, in sum, supplies ample ground on which to view George as volatile: as having both a quick trigger to fire employees but also a willingness to rescind his sudden termination decisions provided employees met conditions he set. The issue for the Court is not whether these volatile employment practices were enlightened. Given the nature of the federal claims Green brings, it is whether the different outcomes George reached as to different employees' job statuses derived from racial discrimination. Here, because Green, unlike Employee B, did not meet the condition that George had set for him to reconsider reinstatement, Green's termination cannot be plausibly ascribed to differences in the two employees' races. More plausibly, it reflects Employee B's willingness, not matched by Green's, to meet the condition George set for potential reinstatement.

*Employee C*: The FAC alleges that, in fall 2013, after "a long history of performance problems that had not been corrected," Employee C failed to ensure that a group of union members were enrolled in a health insurance program. *Id.* ¶ 32. This failure, the FAC alleges, "*could* have amounted to a level of misconduct disqualifying her from receiving severance." *Id.*

¶ 75 (emphasis added).  When this lapse was discovered, Employee C was told to cease performing her duties and to write a report on the status of her assignment.  *See id.* ¶¶ 32, 75. The FAC alleges that Employee C was kept on the payroll while she did so, but "[t]he implication was that her termination was imminent."  *Id.* ¶ 75.  Nevertheless, George "permitted" Employee C to resign from her employment rather than fire her, which made her eligible for severance."  *Id.* ¶¶ 32, 75.

These circumstances differ markedly from those of Green's termination.  Employee C's performance problems reflected incompetence, not misconduct or insubordination; there was no heated incident, as with Green, that immediately preceded the termination decision.  Notably, both Employee C and Green lost their jobs.  As with Employee A, the FAC does not include allegations nearly adequate to support plausibly the inference that the means by which this termination was effectuated (compelled resignation versus termination) reflected the races of the affected employees.  Finally, as with Employee A, it is not clear whether, as to eligibility for benefits, that employee and Green were comparable.  The FAC does not allege whether Employee C was in the Professional Employees Union and therefore subject to the Professional Staff CBA.  *See id.* ¶¶ 42–47.  Accordingly, the FAC's threadbare allegations do not supply a basis in fact on which one could conclude that defendants treated Green and Employee C differently *based on race*.

In sum, the FAC's sparse allegations as to Employees A and C fall far short of that necessary for "a prudent person [to] think [them] roughly equivalent" to Green.  *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 697; *cf. Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (dismissing claim of discrimination under § 1981 when plaintiff "offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his

15

assertion that the panel members were white and that he is Bengali"); *Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) ("The mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination for purposes of a plausible [S]ection 1981 claim."). And as for Employee B, the FAC does not allege facts on which a jury could reasonably conclude that the differing employment actions taken as to them reflected racial animus.

The FAC further fails because the facts pled support plausible non-discriminatory explanations for Green's termination. And "a complaint with 'other possible motives' for the alleged conduct that does not contain specific facts supporting a claim of racial animus 'contradicts a claim of racial discrimination.'" *Robledo*, 965 F. Supp. 2d at 475 (quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999)). By his own admission, Green was fired shortly after he got in a fight with, and made arguably insubordinate comments to, George, his supervisor. Green's own behavior provided an obvious non-discriminatory motive for his termination; the FAC does not offer concrete facts on which to conclude that George was motivated by other considerations. Also relevant, George hired Green. And "where . . . the same person was involved in the hiring and firing of a plaintiff, the presumption against racial bias is difficult to overcome." *Dellaporte v. City Univ. of N.Y.*, No. 12 Civ. 7043 (KPF), 2014 WL 684764, at *9 (S.D.N.Y. Feb. 21, 2014). "'[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" *Id.* (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)) (alteration in *Dellaporte*); *see also Figueroa v. New York Health & Hospitals Corp.*, 500 F. Supp. 2d 224, 236 (S.D.N.Y. 2007). To be sure, the

FAC alleges that "George did not want to hire [Green] for the Organizing Director job in September 2008," FAC ¶ 24, but it alleges that George did so nevertheless.

The FAC's claim of a racially motivated termination thus lacks a basis in concrete fact. It is unacceptably conclusory. *See Sanders v. Genadier Realty*, 367 Fed. App'x 173, 175 (2d Cir. 2010) (affirming dismissal "because plaintiffs do not allege any facts supporting an inference of racial animus"); *see also Burgis v. Dep't of Sanitation City of N.Y.*, No. 13 Civ. 1011 (TPG), 2014 WL 1303447, at *6 (S.D.N.Y. Mar. 31, 2014) (granting motion to dismiss when plaintiffs included "no facts to support their conclusory allegation that the Department's failure to promote them was the product of intentional discrimination" and pleaded "only one sentence alleging that defendants *intentionally* discriminated against plaintiffs"). The FAC's federal claims, based as they are on the premise of racial discrimination, must, therefore, be dismissed.[7]

### B. Claims Under New York City and State Law

Having dismissed Green's federal law claims, the Court must next determine whether to exercise supplemental jurisdiction over his remaining claims, which allege racial discrimination under the NYCHRL and failure to pay wages under the NYLL. Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a

---

[7] The FAC also alleges discrimination based on Green's ancestry (he is Jewish) but this claim is even more wide of the mark. There are no factual allegations pled that would indicate bias based on ancestry or religion on George's part. And to the extent the FAC seeks to gain traction by citing the experiences of other employees, it does not allege whether or not any of the cited comparators are Jewish. Green's claim, to the extent based on discrimination on the basis of ancestry, therefore also fails. *See* FAC ¶¶ 98–99, 102–03, 106–07.

17

district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  In deciding whether to exercise its supplemental jurisdiction, the Court balances the "values of judicial economy, convenience, fairness, and comity."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

      Had the FAC's federal claims proceeded past the motion to dismiss stage, there may have been argument based in judicial economy for the Court to exercise supplemental jurisdiction over Green's NYCHRL and NYLL claims.  But Green's federal claims have been dismissed at the threshold.  And the standards governing Green's federal claims differ from those under the NYCHRL:  "[C]laims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  Thus, the Court's dismissal of Green's claims under federal law does not necessarily dictate dismissal of his claims under NYCHRL.  This case is thus one in which the Court should heed the principle that, in general, state claims ought to be dismissed when all federal claims are dismissed.  *In re Merrill Lynch*, 154 F.3d at 61.  The Court accordingly declines to exercise supplemental jurisdiction over the FAC's NYCHRL and NYLL claims.  Accordingly, those claims are dismissed without prejudice.

## IV.    Motion for Sanctions

      Federal Rule of Civil Procedure 11(b)(3) "provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint 'certifies that to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *ATSI Commc'ns*, 579 F.3d at 150 (quoting Fed. R. Civ. P. 11(b)(3)) (alteration in *ATSI Commc'ns*). Rule 11(c), in turn, provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.'" *ATSI Commc'ns*, 579 F.3d at 150 (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)); *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("Rule 11(b)(2) 'establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" (citing Fed. R. Civ. P. 11 advisory committee note to 1993 amendments)).

Defendants made their Rule 11 motion after the filing of the original Complaint, but before the filing of the FAC. In that motion, defendants argue that plaintiff omitted certain essential facts from the Complaint, including relating to settlement discussions between the parties under which Green might have obtained a negotiated benefits package. At argument, defense counsel stated that defendants would withdraw their motion for sanctions should the FAC be dismissed. Having granted the motion to dismiss the FAC, the Court treats the motion for sanctions as withdrawn. In any event, the motion was meritless. Counsel's conduct was not "objectively unreasonable." *ATSI Commc'ns*, 579 F.3d at 150. The facts omitted from the

original Complaint were not required to be included; on the contrary, they reflected counsel's post-termination settlement discussions, which are both irrelevant to the claim of discrimination and inadmissible. *See* Fed. R. Evid. 408. Accordingly, defendants' motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted and their motion for sanctions is denied. The Clerk of Court is directed to terminate the motions pending at docket numbers 12 and 21, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: July 29, 2014
New York, New York

20